IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

FEDERATED SERVICE INSURANCE
COMPANY,

              Plaintiff,

       v.

STIHL INCORPORATED doing business as
STIHL NORTHWEST,

              Defendant,

STIHL INCORPORATED doing business as
STIHL NORTHWEST,

              Third-Party Plaintiff,

       v.

BEE TEE ENGINGE SALES, INC., JEFFREY
BELTRAMO, HUSQVARNA PROFESSIONAL
PRODUCTS, INC., and JOHN DOES 1-4,

              Third-Party Defendants.

Case No. 1:11-CV-3097-CL

ORDER

CLARKE, Magistrate Judge.

       This matter comes before the court on a motion to dismiss or strike plaintiff's claims

against third-party defendants (#70) filed by third-party defendant Husqvarna Professional

Products ("Husqvarna").  Third-party defendant Bee Tee Engine Sales ("Bee Tee"), an agent of

Husqvarna, joins in the motion (#77).  Both parties have consented to the jurisdiction of a

magistrate judge (#91). For the reasons below, the motion to strike is DENIED, and the motion
to dismiss is construed as a motion for summary judgment and is GRANTED.

## BACKGROUND

The following facts are taken in the light most favorable to the non-moving party:

Husqvarna is a manufacturer and distributer of tools and outdoor products. In April
2008, Husqvarna entered into a Dealer Agreement with Tyrholm Big R., Inc., dba Big R Stores
("Big R"), a commercial retailer of farm and ranch products with a registered agent in White
City, Oregon. Pursuant to the Dealer Agreement, Husqvarna distributed its products in Big R
stores throughout Oregon. In the Big R store in Klamath Falls, Oregon, Husqvarna and STIHL
Incorporated, dba STIHL Northwest ("STIHL"), another manufacturer and distributor of tools
and outdoor products, presented their products in adjacent displays. Husqvarna's display was
installed around 2001 by Husqvarna's agent, Bee Tee. Both the Husqvarna and STIHL displays
were composed of multiple sections, each with an interconnected florescent light at the top of
each section. The Husqvarna display unit was plugged into the STIHL display unit's electrical
supply.

On June 15, 2011, a fire started in the STIHL display unit in the Klamath Falls Big R
store. The fire caused smoke and water damage throughout the store, including significant
damage to both the STIHL unit and the adjacent Husqvarna unit. After the fire, plaintiff
Federated Insurance Company ("Federated"), the insurer for Big R, inspected the premises and
catalogued the damage. On July 12, 2011, Federated filed a lawsuit in the Klamath County
Circuit Court against STIHL, alleging that the fire was caused by negligence in the installation of
the display or in STIHL's failure to maintain, inspect, or warn.

On July 28, 2011, the STIHL unit was inspected by experts for STIHL and Federated. Based on the examination, the experts agreed that the burn patterns showed that the fire originated in the STIHL unit, and further agreed that the STIHL unit and its electrical components would be preserved for further testing and inspection. Because the STIHL unit appeared to be the sole cause of the fire, the Husqvarna unit and other damaged goods were removed from the store and destroyed.

On November 30, 2011, STIHL's and Federated's experts attended an additional inspection of the display. During this inspection, the experts discovered that because the Husqvarna display had been plugged into the STIHL display, the electrical load from the two displays may have contributed to the fire. The inspection was then terminated, and Husqvarna was notified that the parties may have claims against it.

On February 1, 2012, experts for STIHL, Federated, and Husqvarna attended an inspection of the STIHL unit. On June 18, 2012, the experts examined an exemplar Husqvarna unit, which Husqvarna's unit installer, Brian Thompson, stated appeared to be the same as the destroyed Husqvarna unit. The exemplar unit had the same electrical wiring configuration as the original unit. Based on measurements of the exemplar unit's electrical loads in combination with the electrical loads from the STIHL unit, Federated's experts concluded that the Husqvarna unit caused a dangerously high overload of electrical current that "melted the plugs" and caused the fire. On February 29, 2012, STIHL filed a Motion to File a Third-Party Complaint against Husqvarna; the installer of the unit, Bee Tee; and Bee Tee's owner, Jeffrey Beltramo. The court granted STIHL's motion, and STIHL filed its Third-Party Complaint on March 9, 2012.

On September 18, 2012, Federated filed "Claims Against Third-Party Defendants Pursuant to Rule 14(a)(3)," bringing claims directly against Husqvarna and incorporating

STIHL's Third-Party Complaint. On October 2, 2012, Husqvarna filed a Motion to Dismiss or

Strike Federated's third-party claims. Bee Tee filed a notice of joinder in Husqvarna's motion

on October 15, 2012 (#77). STIHL was dismissed from the lawsuit on the parties' stipulation on

December 26, 2012 (#88).

## BEE TEE'S JOINDER

The court first considers where Bee Tee's joinder in Husqvarna's motion was proper. On

October 22, 2012, Federated filed an opposition response to Bee Tee's notice of joinder in

Husqvarna's motion, arguing in part that Bee Tee was not a party to the Dealer Agreement.

Federated contends that Bee Tee, as the installer of the Husqvarna display, did not broker the

Dealer Agreement, and that the Dealer Agreement would not apply to Bee Tee because the

installation of the Husqvarna unit occurred several years prior to the signing of the Dealer

Agreement.

Federated's 14(a)(3) claims stated that Bee Tee was a "Husqvarna distributor and agent

of Husqvarna," and that "[a]t all material times, the relationship between Bee-Tee [sic] and

Husqvarna was of such a nature that it created an agency relationship between the two entities."

Because the Dealer Agreement states that it shall be "construed, enforced and performed

in accordance with the laws of North Carolina," the court analyzes the agreement under North

Carolina state law. Pltf. Mot., Ex. A, p. 5. Under North Carolina law, an agent may assume the

protection of the contract signed by the agent's principal. Ellison v. Alexander, 207 N.C.App.

401, 412 (2010) (citing Brown v. Centex Homes, 171 N.C.App. 741, 745 (2005)). Bee Tee was

an agent of Husqvarna at the time the Dealer Agreement was signed. As an agent of Husqvarna,

Bee Tee is entitled to the protections of the Dealer Agreement. Accordingly, Bee Tee's joinder

is proper.

**MOTION TO STRIKE**

Husqvarna, joined by Bee Tee, argues that Federated's 14(a)(3) pleading asserting third-party claims should be stricken as untimely. Husqvarna argues that Federated's 14(a)(3) pleading is an attempt to amend its pleadings without permission from the court and that it was filed after the scheduling order's final date to amend pleadings. Husqvarna also contends that allowing Federated's claims at this stage would cause prejudice, arguing that Husqvarna did not have notice prior to the 14(a)(3) claims that it needed to defend against claims by Federated, and that it now needs to retain financial experts to properly address Federated's damages claims.

The court finds that Federated's 14(a)(3) claims against Husqvarna are proper. Once a third-party is impleaded, Federal Rule of Civil Procedure 14(a) allows a plaintiff and a third-party defendant to assert claims against each other to the extent those claims arise out of the same transaction or occurrence that is the subject of the original plaintiff's claim against the original defendant. The Commentary following Rule 14(a) states that a plaintiff is not required to amend his complaint to state a claim against a third-party defendant. In addition, neither the Federal Rules nor the case's scheduling order restrict the time period to assert third-party claims. The court also finds no significant prejudice to Husqvarna or Bee Tee as a result of the 14(a)(3) claims. As Federated argues in its response to Husqvarna's motion, the damages in this case are limited to property loss, and all damages are well-documented by the insurance carrier. Husqvarna's motion to strike is DENIED.

**MOTION TO DISMISS**

I.    Applicable Analysis

Husqvarna, joined by Bee Tee, argues that the 14(a)(3) claims should be dismissed because there is no admissible evidence that could be used by Federated to prove its claims, and

that its liability is barred by a limitation of liability clause and an arbitration clause in a contract between the parties. To address these claims, the court first must determine whether the pending motion to dismiss should be analyzed as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or as a motion for summary judgment under Federal Rule of Civil Procedure 56(c). Rule 12(b) states that if, in evaluating a motion to dismiss for failure to state a claim, the court does not exclude any "matters outside the pleadings," the court shall construe the motion as a motion for summary judgment, and give all parties the opportunity to present material accordingly. FED. R. CIV. P. 12(b).

Here, Husqvarna has supplemented its motion to dismiss with the Dealer Agreement and emails between counsel. Federated also submitted extrinsic evidence in its opposition to the motion, including expert reports on the cause of the fire and a deposition transcript of Brian Thompson. Because the parties have submitted matters outside the pleadings, examination of the motion to dismiss under the standards applicable to a motion for summary judgment is appropriate. Accordingly, the court analyzes Husqvarna's motion to dismiss, joined by Bee Tee, as a motion for summary judgment.

II.    Summary Judgment Standard

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. Id. The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975,

988 (9th Cir. 2006) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).  When the moving

party has met its burden, the non-moving party must present "specific facts showing that there is

a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986) (quoting FED. R. CIV. P. 56(e)).  Conclusory allegations, unsupported by factual material,

are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045

(9th Cir. 1989).

## DISCUSSION

I.    Spoliation

    Husqvarna, joined by Bee Tee, argues that there is no admissible evidence that could be

used by Federated to prove its claims.  Husqvarna alleges that the only critical evidence for

STIHL's third-party claim against Husqvarna and Bee Tee is the original Husqvarna display.

Because Federated destroyed this display after the fire, Husqvarna contends, the original display

has "spoiled" and the court should dismiss the case.

    A federal trial court has authority to make evidentiary rulings in response to claims of

spoliation of relevant evidence.  Glover v. BIC Corp., 6 F.3d 1318, 1328 (9th Cir. 1993).

Generally, a party engages in spoliation only if it destroys evidence with notice that the evidence

is relevant to the litigation.  Akiona v. U.S., 938 F.2d 158, 161 (9th Cir. 1991).  The rationale for

this policy is deterrence: "A party should only be penalized for destroying documents it if was

wrong to do so, and that requires, at a minimum, some notice that the documents are potentially

relevant."  Id.  When deciding its ruling regarding a claim of spoliation, the court should also

consider whether the existence of secondary evidence reduces the prejudice caused by loss of

primary evidence.  Med Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 825

(9th Cir. 2002).

In this case, the record does not indicate that Federated had notice that the Husqvarna display unit was relevant to the case when it destroyed the unit. Federated and STIHL's inspection led them to believe that the fire that originated in the STIHL unit was caused by a problem within the STIHL unit. The Husqvarna unit was destroyed along with other debris from the fire in July 2011. Federated did not destroy the unit with knowledge that it would be used in the case. In addition, the availability of an exemplar unit reduces prejudice caused by the loss of the original unit. Husqvarna's own installer stated that the exemplar had the same light fixtures and configuration as the original display. Pltf.'s Resp., Ex. F., p. 69. Likewise, Federated's expert reports state that "[t]he use of the exemplar Husqvarna display to determine the rated load current is proper," and that the exemplar unit had the same lighting configuration and type of light fixtures as the original display. Pltf. Resp., Ex. E, p. 3; Ex. D., p. 10. Husqvarna's motion based on spoliation is DENIED.

I.    Dealer Agreement

Husqvarna and Bee Tee also argue that Federated's claims are barred by a limitation of liability clause and an arbitration clause in the Dealer Agreement. Federated contends that neither provision is enforceable because the Dealer Agreement as a whole is not enforceable.

Because the Dealer Agreement states that it shall be "construed, enforced and performed in accordance with the laws of North Carolina," the court analyzes the agreement under North Carolina state law. Pltf. Mot., Ex. A, p. 5. Under both North Carolina law and the common law of contracts, a contract is enforceable if there is a "meeting of the minds" regarding the material terms. That is, "[n]o contract is formed without an agreement to which at least two parties manifest an intent to be bound." Parker v. Glosson, 182 N.C.App. 229, 232 (2007) (citing Croom v. Goldsboro Lumber Co., 182 N.C. 217 220 (1921)). Determination of whether there

has been a meeting of the minds is based on multiple factors. "In an action on a contract, the intention of the parties to the contract must be determined from the language of the contract, the purpose and subject matter of the contract and the situation of the parties." Adder v. Homan & Moody, Inc., 288 N.C. 484 (1975). When considering whether a contract is enforceable, the fact that a contract is unsigned is not dispositive. "It is equally efficacious if a written contract is prepared by one party and delivered to the other party, and acquiesced in by the latter without objection." W.B. Coppersmith & Sons v. Aetna Ins. Co., 222 N.C. 14, 21 (1942); see also Peddler, Inc. v. Rikard, 266 S.C. 28, 32 (1975).

Here, Husqvarna prepared a five-page Dealer Agreement, which Big R signed and returned to Husqvarna around April 2008. While Husqvarna did not sign the contract, both parties indicated their intent to be bound: Husqvarna drafted the contract, Big R signed and returned it with no objection, and both Husqvarna and Big R have performed under the contract.

Federated argues that the Dealer Agreement is not enforceable in part because the Dealer Agreement states that the "Dealer" is "Tyrholm Big R, Inc., dba Big R Store," with a street address in White City, Oregon. Federated points to a provision of the Dealer Agreement stating that the Dealer agrees "to only do business from the location described above" as evidence that the Dealer Agreement should relate exclusively to the Big R store in White City, and not apply to the Klamath Falls Big R store. The court finds this reading of the contract too narrow. First, the Dealer Agreement lists "Tyrholm Big R, Inc., dba Big R Store" as the Dealer – the parent company for the Big R stores in Oregon. If the parties had intended that the agreement only apply to a specific store, rather than Big R as a parent company for the Big R stores in Oregon, then the Dealer Agreement could have stated otherwise. Second, the listing of the White City Big R store address as the Dealer's address is appropriate. The White City Big R store is the

registered agent for Big R and is listed as Big R's principal place of business with the Oregon Secretary of State. The court finds that the Dealer Agreement was intended to be applicable to all Big R stores, including the Big R store in Klamath Falls.

Federated also contends that the Dealer Agreement is not enforceable because it states that "[t]his Agreement begins as of the 'Effective Date' below (to be completed by the [Husqvarna] Company," and the "Effective Date" section is not filled out or signed by Husqvarna. The court disagrees. The Dealer Agreement was drafted by Husqvarna. Big R signed and returned the Dealer Agreement with the "Effective Date" section left blank, indicating that Husqvarna could fill in any date without objections from Big R. Big R presumably signed the contract with the present intent to be bound. In addition, both parties maintained a relationship consistent with the terms of the Dealer Agreement.

Federated lists other reasons for finding the Dealer Agreement ineffective, including that the contract only applies to defective products, the contract is dated after the fire occurred, and that the contract does not mention subrogation. The court disagrees with these arguments as well. The Dealer Agreement states that the Dealer is both a "Sales and Services" provider, indicating that services and maintenance are covered in addition to products. The Dealer Agreement is dated three years before the fire occurred, making the Dealer Agreement fully applicable to the fire. The fact that the Dealer Agreement does not mention subrogation explicitly is immaterial; Federated is clearly stepping in the shoes of Big R for the purpose of litigation this subrogation case.

I.    Arbitration Agreement

Finding that the Dealer Agreement is an enforceable contract, the court turns to the Agreement's arbitration agreement. The Dealer Agreement contains an arbitration provision

stating that any disputes between the parties concerning the Dealer Agreement must be submitted

to arbitration within one year of the date the dispute arose, or are barred.  Husqvarna contends

that the arbitration provision bars Federated's claims because Federated did not make a request

for arbitration within the required time period.  The arbitration provision provides:

> The parties agree that any disputes arising between the parties concerning this
> agreement shall be submitted to binding arbitration under the commercial
> arbitration rules of the American Arbitration Association ("AAA").  Judgment
> upon the award may be entered in any court having jurisdiction.  Unless otherwise
> agreed by the parties, a single arbitrator shall conduct the arbitration.  The parties
> agree the arbitration shall be held in Charlotte, North Carolina.  The arbitrator
> shall be required to issue a reasoned decision with respect to any determination.
> The fees of the arbitrator shall be divided equally between the parties.  Each party
> shall bear all of its own remaining costs of the arbitration, including attorney fees.
> Any and all disputes shall be submitted to arbitration hereunder within one year
> after the date the dispute first arose or shall be forever barred.  Arbitration shall be
> in lieu of all other remedies and procedures available to the parties, provided that
> either party may seek preliminary injunctive or interlocutory relief prior to the
> commencement of or during the arbitration.

Pltf. Mot., Ex. A, p. 4-5.

North Carolina has a public policy favoring settling disputes by means of arbitration.

Prime South Homes, Inc. v. Byrd, 102 N.C.App. 255, 258 (1991).  "[W]here there is any doubt

concerning the existence of an arbitration agreement, it should be resolved in favor of

arbitration."  Martin v. Vance, 133 N.C.App. 116, 119 (1999).  However, "[a] party waives

arbitration when it engages in conduct inconsistent with arbitration which results in prejudice to

the party opposing arbitration."  Servomation Corp. v. Hickory Constr. Co., 316 N.C. 543, 544

(1986).  A party may be prejudiced by his opponent's delay in seeking arbitration if he is forced

to bear the expenses of a long trial, loses helpful evidence, takes steps in litigation to its

detriment, expends significant amounts of money on the litigation, or its opponent makes use of

judicial discovery procedures not available in arbitration.  Douglas v. McVicker, 150 N.C.App.

705, 707 (2002) (citing Servomation, 316 N.C. at 544).  In Douglas v. McVicker, for example,

the Court of Appeals of North Carolina held that a defendant waived an arbitration clause by

serving a request for a production of documents, as such a procedure was not available in

litigation. Id. at 707.

Here, the court agrees with Husqvarna and Bee Tee that Federated, as Big R's insurer,

waived its right by not requesting arbitration within one year from discovering that it had

potential third-party claims.  The arbitration provision states that "all disputes shall be submitted

to arbitration hereunder within one year after the date the dispute first arose or shall forever by

barred."  Federated first had notice that it had potential claims against Husqvarna immediately

following the November 30, 2011 inspection, and did not make a demand for arbitration within

the one-year period.  Even if Federated had raised the issue of arbitration in the required time

period, however, its rights were still waived by engaging in discovery.  A party seeking to

enforce an arbitration clause waives its right to do so by engaging in judicial discovery

procedures not available in arbitration.  Douglas v. McVicker, 150 N.C.App. at 707.  Here,

Federated engaged in judicial discovery procedures related to its claims against Husqvarna that

are not available under the American Arbitration Association's rules for commercial arbitration.

II.    Limitation of Liability Clause

Because Federated's rights to enforce the arbitration agreement have been waived, the

court turns next to an analysis of the limitation of liability clause.  The clause provides:

> TO THE EXTENT PERMITTED BY LAW, UNDER NO CIRCUMSTANCES
> SHALL EITHER PARTY BE LIABLE, WHETHER AS A RESULT OF
> BREACH OF CONTRACT, WARRANTY, TORT (INCLUDING
> NEGLIGENCE OR PATENT INFRINGEMENT) OR OTHERWISE, FOR ANY
> SPECIAL CONSQUENTIAL, INCIDENTAL, INDIRECT, PUNITIVE OR
> EXEMPLARY DAMAGES RELATING TO OR ARISING OUT OF THIS
> AGREEMENT OR ANY PRODUCT DELIVERED HEREUNDER.

Pltf. Mot., Ex. A, p. 5.

Under North Carolina law, limitation of liability clauses are generally upheld unless they are extremely unconsciousable or limit the right of a common carrier to render public serves. Blaylock Grading Co., LLP v. Smith, 189 N.C.App. 508, 511-512 (2008) (see also Gas House, Inc. v. S. Bell Tel. & Tel. Co., 289 N.C. 175, 182 (1976), overruled on other grounds by State ex rel. Utils. Commc'n v. S Bell Tel. & Tel. Co., 207 N.C. 541 (1983) ("[Limitation of liability clauses should be upheld unless] it turns out that one side or the other is to be penalized by the enforcement of the terns of a contract so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice")).

The clause in this case is enforceable.  The installation of the Husqvarna display is an event "relating to arising out of" the Dealer Agreement, as the Dealer Agreement relates to both sales and services by Husqvarna. The record does not indicate any inequality in bargaining power between the parties.  The clause, printed in capital letters in standard-size font as part of the "Standard Terms" to the five-page agreement, is conspicuous and stated in plain language. Because the limitation of liability clause is enforceable, Husqvarna is not liable for the fire. Summary judgment in favor of Husqvarna is GRANTED.

## HUSQVARNA'S COMPLIANCE WITH L-R 7-1

As a final matter, the court considers Federated's argument that Husqvarna's motion should be denied because Husqvarna did not comply with Local Rule 7-1.  Local Rule 7-1 requires that that prior to filing a motion, a party must certify that it "made a good faith effort through personal or telephone conferences to resolve the dispute and has been unable to do so." D.Or.R. 7.1 Federated contends that Husqvarna did not confer with Federated before filing its motion to dismiss or strike.  Husqvarna contends that Federated was aware of Husqvarna's intent to file the motion because it had exchanged emails with Federated, including an email where

Husqvarna stated that it would file a motion to strike or dismiss Federated's 14(a)(3) claims if they were not withdrawn. The court finds this is sufficient evidence of conferral.

## CONCLUSION

For the reasons stated above, Federated's motion to strike is DENIED, and its motion to dismiss is construed as a motion for summary judgment and is GRANTED.

IT IS SO ORDERED.

DATED this _____14_____ day of MARCH, 2013.

_____

MARK D. CLARKE

United States Magistrate Judge